Good to see you here. Good to see you again, Judge. Good morning, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Jonathan Byrne. I'm here on behalf of Steven Helton, who is the defendant below. The issue in this case is whether the lifetime term of supervised release that was imposed upon Mr. Helton after his guilty plea to the simple possession of child pornography is unreasonable. We would argue it is, both procedurally and substantively. Mr. Helton's offense of conviction in this case made him eligible for a term of supervised release somewhere between five years and life, according to the statute. And the district court, when it came time to choose the particular sentence in this case, didn't really provide any analysis of what the proper period of supervised release was. Well, the supervised release and the term of imprisonment were linked, were they not? Well, when the judge I mean, the reduction, the guidelines range was 78 or 79 to 97, wasn't it? And what you got was a downward departure and a downward variance to 60. And it seemed to me that part of the reason for that downward variance was because there was going to be an extended term of supervised release, which was within the guidelines. Of course, the guidelines have a recommendation, whether we agree with it or not, that where something is a sex offense, that there would be a lifetime of supervised release. That may be draconian, but that's what they said. So if we give you what you want, and you think that the downward variance and the supervised release term were in some way related, would the downward variance be open for reconsideration on remand? I mean, it gets back to what we've been talking about earlier. Is what you're wanting really in the interest of your client? Well, Your Honor, I don't necessarily think the supervised release term being vacated would require vacation of the term of imprisonment. Are you saying that the I certainly think it would be right to say that it wouldn't necessarily, but you're not saying, are you, that the district court wouldn't have the right to revisit the package, are you? Well, I think that the term of imprisonment itself isn't at issue at this point. We did not ask the court to review it. The government did not ask. But that wasn't really my question. Are you saying that the district court would not have the authority to revisit the sentence as a whole? Well, I think the district court would have the authority to review whatever this court in the mandate said it could. I would argue that that should not include the sentence of imprisonment because I think the concerns about the sentence of imprisonment are different than the supervised release term, particularly since the severity But the problem is that the district court said, in considering whether or not to vary below the applicable guideline range, it concluded that a downward variance of a 60-month term of imprisonment was sufficient in light of the fact that Helton would be required to be on supervised release for life. So there was a clear linkage between the two. So it may be a be careful what you wish for because we could send it back for the district court to articulate the factors and it's entirely likely that she would simply tick through and say pretty much what I think she's already said and you'd get the same sentence, get the same term of supervised release. Or she could reduce the term of supervised release and go up on the term of imprisonment. So I guess I'm wondering if there isn't the very real possibility here of a pyrrhic victory in what you're asking. But I think, Your Honor, again, I think this court has the ability to craft the mandate to prevent that from happening. But why should we? Why should we sever what the district court conjoined? Because, Your Honor, the term of imprisonment and the term of supervised release are designed to do different things. But they can be weighed, as the district court obviously did, calibrate them together. Well, I disagree with that take on what the district court did, simply because the district court never – she uses the term required a life term, which is incorrect, I think, to begin with. But she doesn't say I'm only doing this because you're getting life. She didn't say, Mr. Helton, you've requested a 15-year term of supervised release. Now, I can give you that, but if I do that, I'm going to give you a – You heard what Judge Duncan just read you. Yes, Your Honor. And she's saying that, you know, the downward variance – I feel more comfortable with the downward variance because there will be a lengthy term of supervised release. I mean, it's not up to me. You know, it's your client, and you currently – within your province to make whatever argument you may want to make and whatever relief you may want to seek, that's all entirely within your purview. But I think you're taking a big risk. Well, I think, Your Honor, I think this goes back to the procedural argument on the unreasonableness. The judge points out this life term but doesn't give us any indication why life is sufficient – or is not more – excuse me – is not more severe than is necessary to achieve the purposes of supervised release, which are not necessarily the same as the purposes of a term of imprisonment. But it's all a part of – a term of supervised release is a part of the sentence. It is. Although – Even if we sort of – I think the judge was slightly clearer than daylight. But even if we didn't agree with you, it is at least – it's not presumptively reasonable because it's a guideline sentence? No, Your Honor, not in this situation. Partly it's because different courts and different other bodies don't agree on what the guideline sentence is in a situation like this. The government doesn't agree what it is. In their brief, they initially say the guidelines recommend life, and they say recommend five to life. And regardless of how the guideline is interpreted, if it recommends five years because that's the mandatory minimum, if it recommends life because that's the maximum, or if it recommends somewhere between five years and life, it doesn't provide any guidance. It doesn't do the – Okay, but that wasn't my question. I was accepting your argument on guidance. But so we accept that, but why isn't the imposition of supervised relief term within the range of five to life presumptively reasonable? Because if it was not within that term, it wouldn't be a guideline question at all. It would be a statutory problem because the district court doesn't have the authority to impose a sentence. So if that is going to be the case, if any sentence within that five to life is presumptively reasonable, then there is essentially no review for supervised relief. No, it simply comes subject to a presumption. It can be rebutted, but there's a presumption. In my experience, I don't know that this court has ever found a presumptively reasonable sentence to be unreasonable substantively. Which is not – Which is not to say it will never happen. Yeah, it's not to say that – But it suggests that it will not. The five to life is really not a guidelines range as it is just the range of punishment. In terms of time period, right? It can go from five to life. Correct. It's not operating as a guideline. It's just that's the range. That's the range from the statute. But, you know, I really sympathize with you because I'm sort of surprised. My colleagues have put you in a very precarious situation. I might say I disagree with at least what they're proposing to you because we do it all the time. The government didn't appeal the sentence. You appealed just the supervised release. We do it all. Restitution is sometime appealed alone. We don't say, well, if you lose, you win on the restitution, maybe the judge will go back and give you your whole sentence. You're being punished for challenging what you're right to challenge, the aspect. So I sympathize. I don't know what you do now. You almost need a side by which to make a call to your client the way my colleagues have posed this case to you now. But I think you're right. I think the mandate would be if you win, the question is you go back and redo the supervised release as to what's appropriate, but not that you go back and revisit the sentence. But, of course, as you know, I'm only one. And numbers are not on your side based on what you've just heard in open court. So I sympathize. I guess I can't really say much more other than the fact that I agree with you in terms of what we ought to be here looking at whether or not the court properly articulated a reason for supervised release. The boy is 19 years old. He's not a recidivist, never been convicted of anything. And you're going to put him for the rest of his life under supervised release? Is there no faith that he might be redeemed? He's 19 years old. Correct. At the time of the offense he was, yes, Your Honor. At the time of the offense, he's 19 years old. And from the time of that offense, I think it's also important to note that there was about an 18-month gap between the search that uncovered the child pornography and the indictment. There's no indication he committed any offense between that time. He was on bond for nearly a year without any problem. And when the police talked to him the first time, he admitted what he had done and said, I've tried to get help for this, but I haven't been able to. And so now he's in a situation where he is, in all instances seems to be he's taking advantage of that. And so, yes, Your Honor, to say you have no hope of ever getting out from under supervision seems harsh in a situation like this. There were a series of enhancements here. The pornographic materials involved pre-cubescent minors and portrayed sadistic and masochistic conduct. Yes, Your Honor. And there were more than 600 images of child pornography possessed. So they led to a series of enhancements here. And when the judge, this was not an unexplained sentence. The judge, as I recall, went through the 3553A factors pretty extensively in terms of the term of imprisonment and what she disapproved of with respect to the conduct. But it wasn't an unexplained sentence. And then she indicated a reasonable supervised release, which is what Judge Duncan read you. Well, she didn't explain the term of supervised release, but in a sense she did because in her comments on the underlying sentence, didn't the district court explain all of the reasons why she was not going to treat the offense lightly? Well, Your Honor, the district court did go through the 3553A factors with regard to the sentence. Of course, a lot of that was tied to the severity of his conduct, which is explicitly off limits when it comes to consideration of the supervised release term. And I think the language Judge Duncan read, where she talks about him being required to serve a lifetime sentence, does not say, and I am requiring you to. And so it's unclear what discretion maybe the judge thinks that she had and how she exercised it because she doesn't say, she doesn't say, for instance, she talks about the need for mental health treatment, things like that. She doesn't explain why he needs a lifetime of it versus 15 years of it or 25 years or 30 years. She doesn't explain how a lifetime term of supervised release is going to have more deterrent effect than a 15-year or a 20-year or a 25-year. She goes straight to the statutory maximum for a case that we would submit doesn't seem to require that. And, of course, the possibility is always there with a shorter term to extend it if there are problems that don't require revocation, if there is some kind of supervision that needs to continue. That kind of flexibility doesn't really exist going the other way because the only thing the judge could do with a life term is simply cut it off. She couldn't say, you're doing well, so we're going to give you something to shoot for, we're going to reduce it to 20 years. And so we think that flexibility, again, is another reason to vacate the sentence. Thank you, Your Honor. We thank you. Ms. Johnston. Good morning, Your Honor. May it please the Court. The record in the case, I believe, clearly demonstrates that the district court did not abuse its discretion in imposing as what the Court has noted. It was a, obviously, statutory permissible term and within the guideline range in this particular case. And it is clear that in doing so that the district court did, in fact, consider the factors under 3553A. And despite what Mr. Burns set forth in the brief that he filed, I think that the district court did apply an individual assessment based on the circumstances of this particular case. In your view, Mr. Burns' comment about the evidence of the enhancements for the instant offense should not bear upon or factor into the term of supervisory. I'm sorry, Your Honor. Could you repeat that? Mr. Burns made the statement that the district judge was precluded from looking at the characteristics of the instant offense in deciding upon the term of supervised release. Do you agree with that? I don't agree with that, Your Honor. I think that the court could take into consideration, as I think you noted that it's a package and that the court could take that into consideration. And clearly the record reflects in this particular case that the district court did, in fact, clearly look at the nature and circumstances of the offense committed by the defendant in this case. But it's your view that that can be taken into account in determining a term of supervised release? Absolutely, Your Honor. And also it's clear from the record that the district court carefully considered the history and characteristics of this defendant, and I think it was very important and was a reason that the district court ultimately concluded. Was the district court able to take into account some of the offenses that were committed by the defendant when he was a minor when it came down to sentencing? I think the district court could have, Your Honor. It didn't appear as though, I mean, I think the district court did obviously mention that in determining to impose lifetime supervised release. Obviously it was important to the district court that this defendant receive the necessary mental and corrective treatment that he needed, and I think in doing so the district court noted that he had, in fact... If we vacated the term of supervised release and were to remand, would that throw open the whole sentencing proceeding on remand? Would the district court, in your view, should the district court, in your view, be free to revisit the term of imprisonment? I believe, Your Honor, I think there's a possibility that that could, in fact, occur in this case, and as Judge Duncan... The question is whether or not the district court would have the authority to do so, I think was the question. I think, Your Honor, that it may be the way that this court... Counsel, I'm sorry. Would the court have the authority to do so if not circumscribed by the court's mandate? It's kind of a simple yes or no. I believe that it would be based on what this court included in its order when it sent it back to the district court. I'm looking... If we sent it back under a restricted mandate and said, just look at the terms of supervised release, then that would cut into the district court's sentencing function, which is to look at sentencing holistically and as an overall package rather than piecemeal. I mean, you can say that the sentencing... I mean, sometimes we do have very limited mandates and say, look, you've made an error of law with respect to this particular enhancement, a sophisticated means enhancement. So take a look at the sophisticated means enhancement, and that would be, for example, a limited remand. But in this case, where there's some possible relationship expressed relationship between the different forms, wouldn't that argue for a broader remand that would preserve the district court's authority to view the sentencing proceeding holistically? Yes, Your Honor, I agree with that. I mean, if there were remands, then you'd have to tailor the remand to the circumstance. So if that's the case, then, if a district court judge sentenced someone to 30 months and said, well, you know, I've sentenced you 30 months, but I'm going to give you $5 million in restitution, and I'm doing it because I think you... I want you to get out here, hurry up, so you can pay this money off. If they challenge the restitution, that means then you go back and sentence again because they gave you a smaller sentence because it was higher restitution. That's the logic that follows from that. Do you agree with that, too? I guess so, Your Honor, but I think the way that Judge Wilkerson has presented the case is inaccurate. But isn't that a logical extension of the argument that Judge Wilkerson just made, that if you couple it with, on the record, I'm giving you 30 months because I'm going to give you $5 million in restitution, and I want you to get out quickly so you can pay it. If they come here on just the restitution appeal and win, you bring it back to them so you can get more time since there's less money. Isn't that the logical extension of that? I guess you could say that. You guess that, isn't it? You're a lawyer. Is it not? It's logic. It's logic. It's not whether or not you're incurring favor with someone. Is it not the logical extension of that argument? Yes, Your Honor. But it would also be necessary that the $5 million be within... restitution be within the range of acceptable punishment. It couldn't be a number that the court pulled out of thin air. I agree. $5 million, obviously, is what they stole. If I'm looking... I got interested in my colloquy, and perhaps I should address this to Mr. Byrne, but I'm going back through the district court's discussion at Joint Appendix pages 165 through 168, and... well, actually, let me just wait and ask Mr. Byrne. I'll ask Mr. Byrne when he comes up. I'm sorry. Thank you. I think, basically... The scope of the mandate, the Court of Appeals is pretty much in charge of the scope of the mandate. Is it not? Yes, Your Honor. Based on the record, I think that it's clear that the district court did not abuse its discretion in this case and certainly considered the 3553A factors in imposing the sentence in this case. And I think, as Judge Duncan noticed, in defense counsel's sentencing memorandum, he asked for basically a variance, but noted that then the court could impose a lengthy sentence. And then at the time of sentencing, basically that same argument was made by defense counsel in this case. This was a lengthy sentence. Five years for looking at pictures. It was, Your Honor, but it was certainly a variance. It was a downward variance. But five years is still a pretty significant sentence. It is, Your Honor, but it was a variance from the guideline range of 78 to 97. In this case, can you imagine how many people might go to prison for five years if you figured how many 19-year-old males would look at those pictures in the country? Wouldn't it? It would be federal crime because how many 19-year-old males would look at those same pictures? Wouldn't it? I mean, we're talking in the scale in terms of giving a 19-year-old kid lifetime supervision. That's the context of it, right? That's correct, Your Honor, but I think, really, if you look at the record in this case, there was... But didn't he also sexually abuse... Can you finish by answering my question, please? I'm sorry, I apologize. Your Honor, could you repeat the question, please? I'm saying it in terms of the context of these because I believe the Supreme Court didn't give much guidance, but at some point we have to grapple with what is substantive unreasonableness, and that's my question. In the context of substantive reasonableness, you have to look at it in the context of the environment of activity. So my question is, you look at... Think about how many 19-year-old males do you think in America would look at the same picture? Look at it, because that's what he's charged with, looking at those pictures. We don't know whether he looked at them for one second, five seconds, or five hours. He looked at them, right? Or at least they're on his computer. So in the context of that, to give that person lifetime supervision, no opportunity ever to redeem himself at all at 19 years when he had committed the offense. A teenager. Isn't that substantive unreasonableness? I don't believe so, Your Honor, because the record reflects that he knowingly possessed them, he just didn't access with intent of view, which is a different statute, and that he had done so for a period of seven months. The record also reflects the district court knew at the time that he had been looking at child pornography when he was only 14 years old. So I think the district court took those facts into consideration in determining that a variance was permissible in this case, was warranted, but, you know, not unreasonable. I was just going to mention the fact that one of the considerations was his admissions to having viewed child pornography as a child and to have sexually abused a 3-year-old when he was 10. So those were also factors that make up the context. And she mentions those more than once in explaining why she arrives at a downward variance for the sentence and the term of supervised release. And, in fact, the term of supervised release, she calibrated it to exclude, include certain things, and then exclude certain things which he found were too onerous. She explained why she thought it wasn't necessary for a probation officer to have access to his financial information. She walked through the reasons for including and excluding a variety of things and said the terms of supervised release should be tailored to accomplish the purposes that are necessary given the particular defendant and the offense for which the person is placed on supervised release. So my language will be that the terms and conditions should have some reasonable basis given the facts and circumstances of the offense such that they accomplish the purposes that are intended by supervised release. And then she walked through them for about three... several of them at least. That's correct, Your Honor. She did. I think that started on page 193, the joint appendix, and went through several pages where she set forth her reasons. It's a carefully done... It's a carefully done sentencing. And the... Some of the objections, and I have some sympathy with my colleagues' views on the child pornography cases. These sentences can be very harsh. But I just wonder if it isn't... You've got Congress taking a view of this, and you've got the Sentencing Commission taking a view of this, and they have both sort of weighed in on the side of severe penalty. And it can be strict. I just don't know that I have the authority to overturn those basic policy judgments that the Sentencing Commission and the Congress have made. And when I get down to this particular sentencing, this was a conscientious district judge. I mean, she went about it the way you'd hope people would go about it. I agree with that, Your Honor. I just finally would note that, obviously, as noted in the government's brief, the defendant can go back and ask the court after a year, after he's been on supervised release for a year, to revisit, to modify, or to terminate the term of supervised release. So, having... Which would be probably objective because I've seen most of the government, after people serve long terms, they come here and ask for them to remain forever. Your Honor, I will say this. In our district, the probation office does have a habit of contacting us and saying that some defendants are doing well on supervised release, and do we oppose their recommendation that it be modified or terminated. It depends on the specific case. That's why we can't weigh the substantive, whether it's reasonable or not, what you might do. Do you agree with that? Absolutely. Absolutely. That's not in our calculus. But getting back to these cases, how does a case like this come to the attention of the government? Are you monitoring people who are on these? Your Honor, the West Virginia Internet Crimes Against Children Task Force does undercover operations where they monitor people on the Internet. So you decide which ones you're going to go after. There must be thousands of people doing this. Right? There are many, Your Honor. How do you pick who you go after? We look at it, and this is a prime example of we knew at the time that this particular defendant had a history of the sexual assault. That's something we take into consideration. We take into consideration how long the individual's been possessing, downloading the child pornography, the number of images that they are possessing or downloading or receiving. Those are just some of the different factors that we take into consideration. And that's totally up to the federal government to decide who gets prosecuted. Yes, Your Honor. The prosecutorial discretion, I guess, has been a part of our system since forever. And that's one of the problems, I guess, in this country about how that's used. And until the court begins to address that seriously, the country's in turmoil now, I guess, in a sense, for some of those issues. But I'm not saying those issues are here today. But we can't... That's why I was wondering, how do you pick these people? Do you do it, like, random in a bag? Or just whether or not you... whatever. One other factor that we do look into, Your Honor, is whether or not they've done this in the past, whether or not they have prior conviction. That's why I ask the question. It's not frivolous at all. I think this might be a good case to write in a sense in what is substantive reasonableness because, am I right? There must be tens of thousands of people looking at this, this kind of material. So when you look at whether or not you put somebody on... For example, marijuana, when it first started, they were given sentences like 10 years first offense in some states. Now, that would be considered to be draconian, wouldn't it? I mean, somebody's first offense, simple possession of marijuana, you're getting 10 years. Because now there are states where it's illegal. So what I'm saying is that I just look at the broad... There are not tens of thousands of people murdering people and that kind of thing. That's understood. So when you try to look at substantive unreasonableness, you look at how many... Am I right? Aren't there tens of thousands of people looking at the same type of stuff every day in America? There are a lot, Your Honor. Yeah, tens of thousands. Yeah, okay, all right. So I have nothing further. I just ask that the court uphold the district court's determination regarding the life term and position of supervised release in this case. Thank you. Judge Duncan, I have page 165 open, but I think you addressed it with Ms. Nance. I have. It just... It increased my comfort level that the district court actually went through and personalized this, saying this is too intrusive given the facts, this is too intrusive given the facts. There is the reflection of a pretty fair amount of individualized consideration and discussion here. Certainly there is with the conditions. Of course, those were conditions that were specifically objected to prior to sentencing, so everyone knew what the fight was. But I think notably there's no similar analysis as to the length of the term itself, which was also objected to. I understand. Thank you. On the issue of whether the supervised release and the term of imprisonment are linked, whether they can be separated, there are other instances where the two clearly are separated. One of them is the plea agreement, in this case, where the parties agreed not to appeal the sentence of imprisonment, but there was no mention of the supervised release term. The other that I've had a lot of experience with recently are in 3582 cases, because I have a lot of crack clients who did not get the full benefit of the reduction because they were on their way out the door anyway, and they're like, well, can I get my supervised release cut? I'm like, you got to go after a year, file the motion, but we can't do anything about that here. So I think those things can be separated. If there aren't any further questions, I'll leave it on that. Thank you. Thank you. We thank you, and we will adjourn court and come down and say hello to you. This Honorable Court stands adjourned. Senator Dagg, Dossie, United States, and this Honorable Court. Thank you.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Allyson K. Duncan